### NATIONAL LIFE & ACCIDENT INS. CO. v. BURDEN.

#### No. 12073.

Court of Civil Appeals of Texas. Dallas.

Dec. 5, 1936.

Rehearing Denied Jan. 23, 1937.

Read, Lowrance & Bates, of Dallas, for appellant.

W. R. Herring, of Dallas, for appellee.

BOND, Justice.

On February 27, 1934, R. E. Burden made written application to the National Life & Accident Insurance Company for a policy of insurance on the life of his minor child, Winona Burden. In the application, he expressly represented that the insured was in good health and that the only illness, injury, or accident which the child ever suffered was from pneumonia in 1926, lasting about three weeks, from which she had fully recovered.

Relying upon the information furnished by the applicant, the Insurance Company, on March 5, 1934, issued the policy of insurance sued on, naming R. E. Burden as beneficiary, and agreeing to pay him the face value of the policy on condition that the insured was then in sound health. The insured died on April 1, 1934, less than 30 days after the issuance of the policy.

The beneficiary made demand on and furnished proof of loss to the Insurance Company. The proof of loss was accompanied by an affidavit, stating insured (deceased) had never received treatment at any time in any hospital or other institu-

tion, for disease or injury, previous to her last illness and death, except for pneumonia, occurring in 1926. The affidavit was made a part of the proof of loss.

The Insurance Company denied liability, except for the return of the premiums, and set up in its answer, various conditions stated in the policy to avoid liability, denied that the insured was in sound health at the time of the issuance of the policy; and, further, that the policy was obtained by false and fraudulent representations, in that, the application, forming the basis for the issuance of the policy, expressly stated that the insured was in good health and that she had never suffered any illness, injury, or accident previous to her last illness, except pneumonia in 1926.

The cause was submitted to a jury, and, on findings that the insured was, on March 5, 1934, the date of the issuance of the policy, in sound health, and that $100 was a reasonable attorney's fee, the trial court entered judgment in favor of the plaintiff (appellee) and against the defendant (appellant) for the amount of the policy, interest, penalty, and attorney's fee.

 Appellant challenges the findings of the jury that the insured was in sound health on the date of the policy, as being contrary to the undisputed evidence and against the great weight and preponderance of evidence in the case; and, that the policy was procured by false representations and concealment of material facts, thus, the trial court erred in refusing appellant's motion for an instructed verdict in its favor. This appeal presents the question: Is there evidence in the case of sufficient probative force to sustain the findings of the jury? If so, it becomes our duty to sustain the findings and affirm the judgment of the court below on that issue. Courts of Civil Appeals must, on appeal, consider all evidence tending to support the judgment of the trial court, and reject all evidence to the contrary.

The admitted facts and uncontradicted evidence show that the insured, Winona Burden, had been operated upon for mastoiditis, in 1927 or 1928, on both sides of her head, back of her ears; that she remained in a hospital for about 13½ months, with drainage tubes in the opening of her head to allow pus and blood to drain; that she had scars about her arms and body, which were caused from abscesses periodically occurring after the mastoid operation, from which pus drained. Appellee, R. E. Burden, testified that at the time of the last illness, the insured had convulsions, a boil or abscess to come on the back of her head and face, and they drained pus. In response to questions, he testified:

"Q. There was an opening back in March? A. Yes, sir.

"Q. It was running pus, wasn't it? A. Yes, sir.

"Q. How long had that been running pus? A. A place came to her just after she was operated on for mastoiditis, a little light place. They had to drain the blood from an artery; she was in the hospital 13½ months; she had an abscess on this arm (indicating) and one on the shoulder here, and one below her ear, and all these places healed completely up, the old sores.

"Q. Did that place on the back of her head heal up? A. Yes, sir.

"Q. When did it heal? A. Before she left the hospital. They wouldn't dismiss her from the hospital until it healed.

"Q. It was running pus, you said, in March, 1934? A. Yes, sir.

"Q. It developed again? A. Yes, sir, it developed again.

"Q. When did it develop? A. It developed, I will say, after she went back up there. It would drain a while and then heal up. Her health was gradually improving from the time of her operation. Maybe it would drain a week or ten days, and then crust-up and heal-over, and that boil would be perfectly smooth, like any scar, and it would open again; it might be six months, or it might be a year. It would heal-up. After she took that hard spell, it opened up a boil and went to draining, I will say, between the 10th and 15th of March, 1934."

Appellee further testified that on March 5, 1934, the date of the policy of insurance, the insured was not sick in any way that he could notice. She was playing, eating, and sleeping normally. Appellee's testimony was substantially corroborated by that of his wife, Mrs. R. E. Burden, who testified that, since the mastoid operation, the insured had been apparently in good health, and was in good health on March 5, 1934.

Dr. W. E. Carswell testified that the deceased died from brain abscess caused by

septicæmia, an infective process in the brain, with the resulting toxine extending in the blood stream; that, at the time of his first visit to see the deceased, on March 5, 1934, she had an opening in the skull, back of her head, near the external occipital protuberance, which was draining pus, the exact duration of the opening, he could not state, but, in his opinion, it was of long standing; that her ankles were swollen, her feet brown, turned up inward, and were paralyzed, caused by a general septic condition of the patient, resulting in death.

From the above testimony, it seems clear that a general septic condition of the insured existed at the time the application for insurance was made and the issuance of the policy. On the trial of the case, a controversy centered on whether Dr. Carswell visited the patient on March 5, 1934, or some time between March 10 and March 15, 1934; and, whether the insured's condition existed on the former date or developed on the latter date. True enough, a Dr. Clark ventured the opinion, as an expert witness, that it was entirely possible that a nine, year old child, in sound health on March 5, 1934, could thereafter develop an infection that would bring on septicæmia, resulting in a brain abscess that would cause death, but, we think, such is not the case here. The facts and circumstances surrounding the patient before and at the time of the last illness demonstrate, beyond any doubt, that the insured was not in sound health at the time of the issuance of the policy. The prior and past condition are so logically related to her condition at the time of the issuance of the policy, unmistakably, we think, directly and reasonably, conduce to establish the fact that the insured was not in sound health on March 5, 1934; that she was suffering with septicæmia.

Furthermore, we are of the opinion that the failure of appellee to show the true facts in the application for the policy, as to the insured's mastoiditis illness and her 13½ months' confinement in a hospital with drainage tubes in her head, and the intermittent suffering of the patient since, resulting from septicæmia; and, the showing of only a previous illness of pneumonia, from which she had fully recovered, is such fraud by concealment of material facts as to void liability on the policy. It is conceded that the representations made by the applicant as to the insured's previous illness were false; thus, we are unable to approve the judgment of the trial court on that issue. The fraud and deceit, manifestly material to the risk, vitiate the contract, thus, the only liability to which appellant was obligated to pay was the return of the premiums.

Appellant, in pleading and proof, tendered to appellee the amount of premiums paid on the policy of insurance, and to that extent appellee was entitled to recover, which the evidence shows to be only 50 cents; therefore, the judgment of the lower court is reversed and here rendered for appellee for the amount of such premiums; all cost taxed against appellee.

Reversed and rendered.